UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.S.,<br><br>                    Plaintiff,<br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                    Defendant. | Case No. 5:17-cv-01789-SHK<br><br>OPINION AND ORDER |

Plaintiff A.S.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "Agency," or "Defendant") denying his application for supplemental security income ("SSI"), under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff filed an application for SSI on October 13, 2013, alleging disability beginning on August 15, 2013. Transcript ("Tr.") 54, 143-51.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on June 1, 2016, ALJ Helen E. Hesse determined that Plaintiff was not disabled. Tr. 13-21. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on June 29, 2017. Tr. 1-6. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the

---

[2] A certified copy of the Administrative Record was filed on January 29, 2018. Electronic Case Filing Number ("ECF No.") 16. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step

3

in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 416.920. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [SSI]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).[3]
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [SSI]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant cannot do any work he or she did in

---

[3] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

4

the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [SSI]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [SSI]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [SSI]. See id.

Id. at 1098-99.

### B. Summary Of ALJ And Agency's Findings

The ALJ found at step one, that "[Plaintiff] has not engaged in [SGA] since October 3, 2013, the application date (20 CFR 416.971 et seq.)." Tr. 15. At step two, the ALJ found that "[Plaintiff] has the following severe impairments: disorder of the lumbar spine with multilevel disc bulges and conjoined nerve root at L4-5 (20 CFR 416.920(c))." Id. At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." Tr. 17.

///
///

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 416.967(c) except: sit 6 hours out of an 8-hour day, stand or walk 6 hours out of an 8-hour day with normal workday breaks; must be able to change positions briefly for 1-3 minutes every hour; can occasionally lift 50 pounds; frequently lift 25 pounds; frequently climb, bend, balance, stoop, kneel, crouch, or crawl.

Id. The ALJ then found, at step four, that "[Plaintiff] is capable of performing past relevant work as a Warehouse Laborer. This work does not require the performance of work-related activities precluded by [Plaintiff's] [RFC] (20 CFR 416.965)." Tr. 20. The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the . . . Act, since October 3, 2013, the date the application was filed (20 CFR 416.920(f))." Id.

**C.     Issue Presented**

In this appeal, Plaintiff raises only one issue: whether the ALJ properly rejected Plaintiff's symptom testimony. ECF No. 23, Joint Stipulation at 4.

    **1.     ALJ's Consideration Of Plaintiff's Symptom Statements**

The ALJ observed Plaintiff's statements in his disability report that Plaintiff's "pain has worsened[,] . . . that he is in excruciating pain[,] . . . that he is not able to sit, stand, walk or lie down for too long, and that it takes longer for him to care for his personal needs." Tr. 18 (citing Tr. 188-93, 196-201). The ALJ also observed that Plaintiff "noted in his exertional activities questionnaire that he has massive back pain at all times, that he does not do any activities, that he can't perform any chores; and that he needs naps from poor sleep from tossing and turning." Id. (citing Tr. 183-85). Finally, the ALJ observed that Plaintiff "testified that he is in pain at all times. That he spends his days talking to his partner, watching television, and trying to [w]alk around the block." Id.

6

The ALJ then found that Plaintiff's "medically determinable impairments could be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 18. The ALJ provided three reasons for rejecting Plaintiff's symptom statements.

First, the ALJ discussed Plaintiff's symptom statements and noted medical evidence that, according to the ALJ, apparently contradicted Plaintiff's statements. Specifically, the ALJ noted that despite claiming to be "limited physically because of his back disorder[,] . . . [Plaintiff] presented with a normal nerve conduction study." Tr. 18 (citing Tr. 249). Additionally, the ALJ noted that Plaintiff "ha[d] a negative straight leg raising test in spite of the notations of decreased sensation and some weakness in July 2013." Id. (citing Tr. 280-82). The ALJ then noted that "[m]ore recent examinations showed evidence of continued back pa[i]n, but they lacked the continued findings of weakness and diminished sensation in the lower extremities." Id. (citing Tr. 317-42). The ALJ found that Plaintiff's medical records lack the "additional and continuous signs of diminished weakness or muscle atrophy, which would be expected if [Plaintiff] was experiencing the problems and lack of movement and activity at the level he alleges." Tr. 19.

Second, the ALJ noted that Plaintiff stopped working in 2006, but did not allege disability until August 2013 and "[t]he file shows no specific worsening of his physical condition as of August 2013 that would explain the discrepancy in [Plaintiff's] actual work cessation and his alleged onset date." Tr. 18-19.

Finally, the ALJ considered Plaintiff's activities of daily living ("ADLs") and found that despite alleging that "he is essentially unable to perform any routine activity" in his exertional questionnaire, Plaintiff's "testimony notes the capacity to contribute with some chores and other routine tasks." Tr. 19 (citing Tr. 183-85).

/ / /

7

### 2. Plaintiff's Argument

Plaintiff argues that "[t]he ALJ improperly rejected [his] symptom testimony for lack of ongoing objective findings when he continued to receive treatment demonstrating ongoing symptoms." ECF No. 23, Joint Stipulation at 9. Plaintiff adds that the "record contains no evidence from a consultative examination who could have provided further insight into [Plaintiff's] ongoing condition" and "[t]he more recent records are ambiguous in that they do not confirm or deny the objective findings the ALJ seeks." Id. Plaintiff, therefore, argues that "the ALJ should have ordered a consultative examination before finding that [Plaintiff] no longer exhibits [symptoms]." Id. at 9-10.

### 3. Defendant's Response

Defendant responds by arguing that "[t]he ALJ's decision contains a complete evaluation of Plaintiff's testimony and discussion of the evidence supporting the ALJ's conclusions, which is reasonable and free from legal error." Id. at 11.

### D. <u>Standard To Review ALJ's Analysis Of Plaintiff's Testimony</u>

When a claimant has medically documented impairments that "might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '<u>which</u> testimony [the ALJ] found not credible' and explaining '<u>which</u> evidence contradicted that testimony.'" <u>Laborin v. Berryhill</u>, 867 F.3d 1151, 1155 (9th Cir. 2017) (emphasis in original) (quoting <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 489, 494 (9th Cir. 2015). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" <u>Garrison v. Colvin</u>, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting <u>Moore v. Comm'r Soc. Sec. Admin.</u>, 278 F.3d 920, 924 (9th Cir. 2002)).

/ / /

"The ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). Also, while an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. See Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599-600 (9th Cir. 1999) (finding that "[t]he ALJ provided clear and convincing reasons for rejecting [Plaintiff's] testimony" by "point[ing] to specific evidence in the record—including reports by [Plaintiff's doctors]—in identifying what testimony was not credible and what evidence undermined [Plaintiff's] complaints.").

### E. ALJ's Decision Is Not Supported By Substantial Evidence

The Court addresses each of the three reasons provided by the ALJ for rejecting Plaintiff's symptom statements, and finds that none of the reasons are clear and convincing and supported by substantial evidence.

#### 1. ALJ's First Reason Not Clear And Convincing

With respect to the ALJ's first finding—that Plaintiff's statements are not credible because Plaintiff's symptom statements are contradicted by findings in the medical record—the record does not support this finding.

For example, the ALJ found that despite claiming to be "limited physically because of his back disorder[,] . . . [Plaintiff] presented with a normal nerve conduction study." Tr. 18 (citing Tr. 249). A close inspection of the report cited by the ALJ, however, reveals that the nerve conduction study tested only Plaintiff's right peroneal, tibial, and sural nerves, all of which are in Plaintiff's lower right leg. Tr. 249. Thus, it does not follow that Plaintiff's statements relating to the limitations he experiences as a result of his back disorder, are not credible because one nerve conduction study performed on Plaintiff's lower right leg revealed normal findings.

/ / /

This finding also fails for an additional reason. The next record cited by the ALJ—for the proposition that Plaintiff's symptom statements were not credible because Plaintiff "ha[d] a negative straight leg raising test in spite of the notations of decreased sensation and some weakness in July 2013"—reveals significant neurological findings in Plaintiff's back that the ALJ did not discuss. Tr. 18 (citing 280-82). Moreover, the second report cited by the ALJ was dated July 18, 2013—just one month after the June 2013 nerve conduction study of Plaintiff's leg discussed above. Tr. 282.

Specifically, in the July 2013 report, spinal surgery specialist, Dr. Kambiz Hannani, M.D., interpreted MRI images of Plaintiff's back that, Dr. Hannani opined, revealed "a conjoined nerve root at L4-5 with significant lateral recess stenosis getting the right L5 nerve root . . . [and] a small disk protrusion at the S1 level which just touches the right S1 nerve root." Id. Dr. Hannani also noted "tenderness to palpation in the right paraspinal muscles" and a decreased lumbar range of motion in all four areas tested (flexion, extension, right lateral bending, and left lateral bending). Id. Based on these objecting findings, Dr. Hannani assessed "significant radiculopathy, right L5" and noted that "[u]nfortunately [Plaintiff] has a conjoined nerve root which makes the nerve pretty static and [is] likely the reason [Plaintiff] is having these issues with the compression of that nerve." Id.

Accordingly, because the report cited by the ALJ pertained to Plaintiff's lower right leg and not his back, and because a report prepared by a spinal surgery specialist dated only one month after the nerve conduction study of Plaintiff's leg revealed significant neurological problems with Plaintiff's back, the Court finds that the ALJ's reliance on the former, while ignoring the findings in the latter, was not a clear and convincing reason supported by substantial evidence for finding Plaintiff's statements not credible. See Holohan v. Massanari, 246 F.3d 1195, 1207-

08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Similarly unpersuasive was the ALJ's second finding, noted above, that Plaintiff's statements were not credible because Plaintiff "ha[d] a negative straight leg raising test in spite of the notations of decreased sensation and some weakness in July 2013." Tr. 18 (citing 280-82). A close inspection of the record cited by the ALJ in support of this finding, reveals no such negative straight leg raising test. Rather, the record states that Plaintiff's "[s]traight-leg-raise testing on the right side causes severe pain down [Plaintiff's] right leg at about 80 degrees." Tr. 281. Therefore, because Plaintiff's straight-leg-test revealed severe pain, rather than a negative result as the ALJ found, the Court finds that the ALJ's reliance on this record does not constitute a clear and convincing reason supported by substantial evidence for finding Plaintiff's statements not credible.

Finally, with respect to the ALJ's finding that Plaintiff's symptom statements are not credible because "[m]ore recent examinations showed evidence of continued back pa[i]n, but they lacked the continued findings of weakness and diminished sensation in the lower extremities[,]" the record does not support this conclusion. Tr. 18 (citing Tr. 317-42). Roughly half of the pages in the record cited by the ALJ in support of this finding are lab results indicating Plaintiff's heart rate and blood test results, and a progress note from urgent care when Plaintiff presented with the flu, none of which are relevant to Plaintiff's statements regarding weakness and diminished sensation in his lower extremities. See Tr. 317-27, 335, 342. Moreover, although difficult to translate the handwritten notes in the remaining pages of the report, those remaining pages reveal reports that note continued pain, weakness, and diminished sensation in Plaintiff's back and lower extremities throughout the relevant time period.

For example, reports in the exhibit cited by the ALJ range from July 2014 to January 2016, and document "numbness" and "weakness" in Plaintiff's right leg,

11

lower back pain that radiated to Plaintiff's legs, muscle pain, tenderness, "body pain—all over[,]" which Plaintiff rated between at nine and ten out of a ten point scale, and for which Plaintiff was prescribed Norco, Gabapentin, Cyclobenzaprine, and Naproxen and given injections to treat. Tr. 328, 329, 330, 337, 338, 339, 341. Moreover, none of the records in this page range note a decrease of the symptoms noted by the ALJ. Therefore, because the records cited by the ALJ demonstrate continued findings of weakness and numbness in Plaintiff's lower extremities, and pain throughout Plaintiff's entire body, the Court finds that the ALJ's contrary conclusion was not a clear and convincing reason supported by substantial evidence for rejecting Plaintiff's symptom statements.

### 2. ALJ's Second Reason Not Clear And Convincing

With respect to the ALJ's second finding—that Plaintiff's statements were not credible because Plaintiff stopped working in 2006, alleged disability in 2013, and "[t]he file shows no specific worsening of his physical condition as of August 2013 that would explain the discrepancy in [Plaintiff's] actual work cessation and his alleged onset date"—the Court finds that the Agency needs to reexamine this finding. Tr. 18-19.

In addition to the evidence discussed above, which spans throughout the relevant time period from July 2013 to January 2016, and documents physical symptoms so severe that Plaintiff was prescribed narcotic pain medications and muscle relaxers to treat them, Plaintiff's testimony at the May 2016 administrative hearing also indicates an increase of mental and physical symptoms during the relevant time period.

Specifically, Plaintiff testified at the hearing that he was not able to work "[b]ecause right now [he] felt [he] ha[d] so much pain in [his] body. He ha[d] a lot of depression, [and] anxiety . . . and can't sleep." Tr. 37. Plaintiff testified that his primary doctor began prescribing him medication for his depression about "three, [or] four years ago[,]" but that they did not help him. Tr. 40. Three or four years

before the May 2016 hearing would be May 2012 or 2013. Thus, this evidence indicates that Plaintiff's pain caused depression, anxiety and a loss of sleep, which Plaintiff's primary doctor began prescribing medication to treat, at roughly the same time that Plaintiff alleged that he became disabled, and that the ALJ found that there was no specific evidence to support Plaintiff's alleged onset date.

Similarly, Plaintiff indicated at the hearing that he has "all body pain[,]" which doctors diagnosed as fibromyalgia one year prior to the hearing, in roughly April 2015. Tr. 41-42. Plaintiff's medical records corroborate Plaintiff's testimony. Specifically, in June 2016 and January 2016, Dr. Mario Diaz-Gomez assessed "new onset of fibromyalgia" as of April 2015. Tr. 328, 330. Dr. Diaz-Gomez also noted that Plaintiff reported that Plaintiff's "pain specialist also told [Plaintiff] that he probably has fibromyalgia." Tr. 328.

Accordingly, because the record contains several examples of Plaintiff experiencing increased mental and physical symptoms after the alleged onset date, the Court finds that the ALJ's finding to the contrary is not a clear and convincing reason supported by substantial evidence for rejecting Plaintiff's symptom testimony.

### 3. ALJ's Third Reason Not Clear And Convincing

The Court next turns to the ALJ's third finding— that Plaintiff's ADLs undermine Plaintiff's credibility because Plaintiff alleged in his exertion questionnaire that "he is essentially unable to perform any routine activity[,]" while his "testimony notes the capacity to contribute with some chores and other routine tasks[,]" and finds that, although a close call, the Agency needs to reexamine this issue. Tr. 19 (citing Tr. 183-85).

With respect to Plaintiffs' activities and chores, Plaintiff stated in his exertion questionnaire that he does not drive, do "any activities[,]" "walk much[,]" climb stairs, shop, work on cars, or do yard work, and that when doing

"housework or other chores[,]" Plaintiff asserted that he "ha[s] to stop right away because of [his] massive pain." Tr. 183-85.

Plaintiff testified at the hearing that he does not drive, and never learned to drive, because of a bad experience he had in a car as a child. Tr. 35. Plaintiff added that "right now, [he] can't really take care of really [him]self" and that he does "all [his] shopping" and attends doctors' appointments with the help of his partner. Tr. 33-35. Plaintiff stated that when he does go to a store with his partner, he gets tired and has to take breaks to lean on something, and he similarly gets tired by walking from the store to his car after they are done shopping. Tr. 44. Plaintiff indicated that he tries to help wash dishes, vacuum, and clean the restroom, but does so "only when [he] feel[s] like [he] can." Tr. 36. Plaintiff does not attend church; he does not have a social media account; he can cook meals only in the microwave; he does not have a computer or a tablet, but does have an iPhone that he enjoys listening to music on, but does not play games on. Tr. 36-37. Plaintiff also enjoys playing with his cats and going to movies. Tr. 37. Plaintiff bathes every day[,] "no matter how much pain [he is] in[,]" but cannot always do so in the morning due to his pain. Tr. 42-43. Plaintiff brushes his teeth and dresses himself daily. Tr. 43. Plaintiff tries to walk around the block "a little bit and then [he] stop[s]." Id. Plaintiff stated that he can only read when his vision is not blurred from the medication he takes. Id. Plaintiff stated that climbing stairs is the "hardest[,]" that he does so only if the elevator is not working, and when he has to take the stairs, he has to stop to take breaks. Tr. 45.

Here, based on the record before this Court, Plaintiff's activities and chores, as stated in his pain questionnaire, appear to be generally consistent with the activities and chores Plaintiff testified he was able to complete at the hearing. Plaintiff stated in both forums that he does not drive, that he perform chores, walks, and climbs stairs all with limitations caused by his alleged impairment. Moreover, to the extent that Plaintiff's testimony at the hearing deviated from

14

Plaintiff's statements in the exertion questionnaire, those deviations were slight and do not detract from Plaintiff's credibility because Plaintiff's ability to perform the tasks in the limited way Plaintiff described at the hearing do not appear transferable to a work setting.

For example, Plaintiff stated in the exertion questionnaire that he cannot climb stairs, but then stated at the hearing that he can do so if the elevator is not working. Plaintiff, however, indicated that when he must climb stairs, it is difficult to do so and that he must take breaks. Plaintiff also stated in the exertion questionnaire that he cannot shop, but then stated at the hearing that he can do so with help, with breaks to lean on things, as that he gets tired by walking from the store to his car.

Moreover, it is unclear how climbing stairs, but only when necessary and with breaks, or shopping, but only with help and with breaks to lean on things, would be transferrable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (It is only when a "claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, [that] a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain."). In this case, the ALJ found that because Plaintiff has the RFC to frequently climb and stand or walk for six hours per day, he could perform his past relevant work as a warehouse laborer. Plaintiff's attempts to perform limited activities when he must, with breaks and with assistance, do not detract from Plaintiff's credibility as to his overall disability. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007 (The Ninth Circuit "'has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'") (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)).

Accordingly, the Court finds that Plaintiff's ADLs were not a clear and convincing reason supported by substantial evidence for rejecting Plaintiff's symptom testimony.

### IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).  On remand, the Agency shall specifically consider and discuss Plaintiff's symptom testimony in light of the evidence discussed above.

IT IS SO ORDERED.

DATED: 9/28/2018

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge